[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14823
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 22, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00041-CR-5-CAR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DERRICK BERNARD JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(July 22, 2010)

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Derrick Bernard Jackson appeals his 42-month sentence for making false claims against the government by preparing and submitting fraudulent income tax returns to the Internal Revenue Service, in violation of 18 U.S.C. § 287. Jackson argues that the district court clearly erred in finding that he committed the offense conduct while under a criminal justice sentence, which resulted in the addition of two criminal-history points. Jackson also asserts that the court abused its discretion in imposing an upward variance of 12 months. We AFFIRM.

## I. BACKGROUND

In February 2009, Jackson was named in a 16-count superseding indictment. R1-110. Count 1 charged that, from 1 November 2003 to 15 April 2008, Jackson committed the offense of conspiracy to defraud the government with respect to false claims, in violation of 18 U.S.C. § 286. Id. at 1-4. Counts 2 through 16 charged Jackson with making false claims against the government by preparing and submitting fraudulent income tax returns, in violation of 18 U.S.C. § 287. Id. at 5-7. The date of the last substantive count was 24 July 2005. Id. at 5-6.

Pursuant to a plea agreement, Jackson pled guilty to Count 15 of the indictment and the government dismissed Counts 1-14 and 16. R1-150 at 2, 6; R2 at 6-7, 11. The parties agreed and stipulated that, for purposes of the guideline calculations, the loss was $106,165. R1-150 at 4-5. The parties also agreed and

2

stipulated that four individual Capital City Bank accounts under the names Derek B. Jackson, Michael Terrell Jackson, Monique Danielle Dennis, and Tracy Lamar Jackson, as well as two SunTrust accounts, were used to further a conspiracy to defraud the government.  Id. at 5.

According to the probation officer, Jackson portrayed himself as a tax preparer, initially doing business as International Tax & Accounting Services. Jackson submitted 19 tax returns during the tax filing years of 2003 through 2006, 15 of which were false claims totaling $106,165.  The tax returns included false Schedule C forms, claiming significant losses for businesses that did not exist. Jackson enlisted the services of his wife, Latrese Shonte Ross, his sister, Lasondra Boyd, Shanita Simmons, Donte Norman, and Jeremy Lawrence.  At Jackson's direction, these co-conspirators electronically filed the tax returns and had the tax refunds deposited in various bank accounts of which Jackson was the proprietor.

An investigation revealed that Jackson's fraudulent scheme was much broader than was reflected in the 19 amended returns, and agents estimated that the scheme included an additional 76 Schedule C returns, many prepared and filed under false or stolen identities, with business expense deductions totaling $959,242.52.  IRS agents determined that, from 2000 to 2005, Jackson filed fraudulent returns for refunds totaling $2,876,933.52, though the IRS did not pay

3

out all of the refunds. The probation officer noted that Jackson would have been held accountable for an intended tax loss of $2,876,933.52 if not for the stipulation in the plea agreement that he would be held accountable for only $104,165.

The probation officer assigned Jackson a base offense level of 6, pursuant to U.S.S.G. § 2B1.1(a)(2). An 8-level increase applied, pursuant to § 2B1.1(b)(1)(E), because the loss was greater than $70,000, but less than $120,000. The probation officer also assigned Jackson (1) a four-level increase, pursuant to U.S.S.G. § 3B1.1(a), because he was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, and (2) a three-level decrease, pursuant to U.S.S.G. § 3E1.1(a) and (b), for acceptance of responsibility and entering a guilty plea in a timely manner. Jackson's total offense level was 15.

The probation officer assigned Jackson three criminal-history points for use of a communication facility to facilitate a drug-trafficking offense, one point for battery, and three points for forgery in the first degree, for a subtotal of seven criminal-history points. With respect to the forgery conviction, the probation officer indicated that, in 2006, Jackson unlawfully took a car and forged a document stating that the owner of the car had given Jackson the right of purchase of the car. On 24 October 2007, Jackson was sentenced to three years' probation by the Jones County Superior Court. Pursuant to U.S.S.G. § 4A1.1(d), two

4

criminal-history points were added because Jackson was on probation for the forgery offense at the time he committed the instant offense, giving Jackson a total of nine criminal-history points and a criminal history category of IV.

Based on an offense level of 15 and a criminal history category of IV, Jackson's guideline range was 30 to 37 months' imprisonment. The statutory maximum term of imprisonment for Count 15 was 5 years. The probation officer noted that U.S. Treasury agents determined that the intended loss was $2,876,933.52, and, had this figure been used to compute Jackson's guideline range, his total offense level would have been 25 with a guideline range of 84 to 105 months' imprisonment. The probation officer also observed that the district court could consider an upward departure based on the underrepresentation of Jackson's criminal history or to reflect the seriousness of the crime.

Jackson objected to the probation officer's statement that agents estimated his scheme to include 76 additional returns with business expense deductions totaling $959,242.52 and an intended loss of over $2,000,000. Jackson objected to the four-level adjustment for role in the offense, contending that he did not engage in criminal activity where he exercised authority over five or more participants, and his activities were not extensive. Next, Jackson objected to the addition of two criminal-history points based on a finding that he committed any part of the instant

5

offense while under any criminal justice sentence. Jackson asserted that his October 2007 sentence for forgery occurred after the instant federal conduct. Jackson also objected to the consideration of an upward departure.

At the sentencing hearing, the government introduced witnesses to prove the extent of the conspiracy. See R5. Derrick Lyman, an agent for the U.S. Secret Service, testified that he participated with the IRS, the Treasury, Office of Inspector General, the U.S. Postal Inspectors, the Jones County Sheriff's Office, and the Baldwin County Sheriff's Office in the investigation of Jackson. Id. at 10-11. Agent Lyman explained that the investigation revealed that Jackson and his wife, Ross, were running a tax service where they recruited people, completed and filed false tax returns for them, and hired people to open accounts into which the refunds from the falsely completed tax returns were deposited. Id. at 11. Agent Lyman testified that the conspiracy was greater than the 15 counts listed in the indictment, that 50 to 100 people had their taxes prepared illegally by Jackson, and that the false claims involved $500,000 to $1,000,000. Id. at 11-12.

Among those who opened accounts for Jackson were: (1) Simmons, who received $10,000 from Jackson for opening an account; (2) Lawrence, whose account had a balance of $32,185.36 in false returns; (3) Norman, whose account had a balance of $15,005.20 in false returns; (4) Michael Terrell Jackson

6

("Michael"), Jackson's brother; (5) Tracy Lamar Jackson ("Tracy"), also Jackson's brother; and (6) Monique Danielle Dennis. Id. at 11-15. Norman wrote two checks totaling more than $17,000 from his account to Deborah Berry, who used that money to purchase an automobile in the name of Ketera Boyd, Jackson's sister. Id. at 14. Jackson used the home of Ross's father, Melvin Terry Ross ("Terry"), as part of Jackson's tax services, even though Terry objected to Jackson using his home. Id. at 17-18.

Norman testified that he knew Jackson through a friend, and that Jackson got Norman's checking account number from one of Norman's checks and had money deposited into Norman's account without Norman's permission. Id. at 26-28, 32-33. A tax refund of $26,865.10 was deposited into Norman's account, though it was not Norman's refund. Id. at 29. On Jackson's instructions, Norman wrote two checks to Berry and a check for $4,500 to Jackson. Id. at 30-31. Norman had just turned 17 when all of these transactions occurred. Id. at 31. Jackson did not offer Norman anything for the use of his bank account. Id. at 28. Norman testified that it was not his intention to become involved in a crime with Jackson. Id. at 31, 33. Norman did not allow Jackson to put the money into his account, and Jackson lied to Norman about the reason he had deposited the money. Id. at 32. Norman felt that Jackson had tricked and duped him. Id. at 32-33.

7

Simmons testified that she opened one or two bank accounts with SunTrust Bank for Ross and Jackson, that she did not put any money into those accounts, and that she did not know how the money got into the accounts. Id. at 35-36. Simmons confirmed that she received $10,000 from Ross and Jackson for opening the accounts. Id. at 36-37.

After hearing the evidence, the court sustained Jackson's objection to the four-level enhancement based on role in the offense because it was not clear that there were five or more participants as that term is defined in the Guidelines. Id. at 49. The court stated that "there was no question" that Jackson was a manager and an organizer, and the court applied a two-level enhancement. See id. at 6, 49.

Jackson also argued that he should not have been assessed the two criminal-history points for being under probation when part of the relevant conduct took place, asserting that there was no evidence that any criminal activity took place after the time of the substantive offenses to which Jackson pled guilty. Id. at 50. He argued that, although Count 1 set forth a time frame of 1 November 2003, to 15 April 2008, the last substantive count took place on 24 July 2005, and he entered a guilty plea to the offense of forgery in the Jones County Superior Court on 27 October 2007. Id. at 50-51.

The government argued that there was a stream of criminal conduct that

continued long after he entered the plea to the forgery charge.  Id. at 55.  Denise Cox, a special agent with the Treasury Inspector General for Tax Administration Office, testified that she participated in the investigation involving Jackson, which revealed that (1) on 7 March 2008, Jackson opened an account with Capital City Bank into which two refund anticipation loans were deposited on 28 March 2008, and on 11 April 2008; (2) on 2 May 2008, Dennis opened an account with Capital City Bank into which two refund anticipation loans were deposited on 16 May 2008; and (3) on 6 May 2008, Michael opened an account with Capital City Bank into which two refund anticipation loans were deposited on 27 May 2008 and 30 May 2008.  Id. at 53-54.

Jackson argued that Agent Cox presented no evidence that the refund anticipation loans deposited into the checking accounts were illegal or fraudulent, because Jackson was qualified and capable of preparing legitimate income tax returns.  Id. at 55-56.  The court found that the government had carried its burden with respect to the two criminal history points and overruled Jackson's objection, stating, "this is a continuation of the activity that we have seen."  Id. at 56.

Jackson also objected to the imposition of an upward departure based on underrepresentation of criminal history or to reflect the seriousness of the crime. Id. at 58.  The court was concerned that the guideline range of 24 to 30 months was

not adequate to deter Jackson. Id. at 58-59. Among the court's concerns were Jackson's manipulative conduct, specifically his deception of Norman, his prior convictions for forgery and for the use of a communication facility to facilitate a drug-trafficking offense, and the fact that Jackson set up an elaborate, long-running scheme involving many people. Id. at 59-60. The court noted that Jackson deceived not only a great number of people, but also the banks. Id. at 60. Further, the court found that this was a very serious offense that involved a large sum of money. Id. The court did not think that a sentence within the guideline range would provide for just punishment or adequate deterrence. Id. at 61.

Jackson argued that his guilty plea indicated that he acknowledged his wrongdoing, and he submitted that the guideline range was adequate to punish him. Id. at 63. Addressing his criminal history, he noted that his use of a communication facility to further a drug-trafficking offense took place when he was 20 years old and that he complied with all supervised release requirements. He noted that his battery charge and the forgery charge in 2006 did not indicate that he was unable or unwilling to reform. Id. at 64. He also distinguished defrauding an unknown entity like the IRS and a personal acquaintance. He said that he regretted what he did, accepted responsibility for his actions and would not do those things again. Id. at 68-69. Jackson asked the court to impose a sentence

not greater than necessary to reflect the objectives of 18 U.S.C. § 3553(a), promising that this would never happen again if given a second chance and less severe punishment. Id. at 69.

The court acknowledged that the Supreme Court's ruling in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005) requires that courts consult the Guidelines and take them into account when sentencing. Id. at 70. The court stated that it had taken the Guidelines under advisement and determined that the guideline range was 24 to 30 months, based on an offense level of 13 and a criminal history category of IV. Id. The court then determined that the guideline range was not appropriate and imposed an upward variance, sentencing Jackson to 42 months' imprisonment, to be followed by a 3-year term of supervised release. Id. at 70-71. The court ordered Jackson to pay restitution in the amount of $78,752.63. Id. at 70. The court determined that the sentence imposed was appropriate, and that the sentence complied with the § 3553(a) factors, noting that the circumstances of the offense included multiple fraudulent acts and the illegal use of third-party identities. Id. at 73.

The court stated that it adopted the Presentence Investigation Report ("PSI") without changes and imposed a sentence above the guideline range (1) because of the nature and circumstances of the offense and the history and characteristics of

11

the defendant; (2) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) to afford adequate deterrence to criminal conduct; and (4) to protect the public from further crimes of Jackson. R1-169 at 1, 3; R5 at 61, 69. Jackson appeals, contesting the two-point criminal justice sentence enhancement and the reasonableness of the sentence.

## II. DISCUSSION

### A. Criminal Justice Sentence Enhancement

"We review the district court's application and interpretation of the Guidelines *de novo* and its factual findings for clear error." United States v. Smith, 480 F.3d 1277, 1278 (11th Cir. 2007). The government must establish, by a preponderance of the evidence, the facts necessary to support a sentence enhancement. Id. at 1280-81.

The Guidelines provide that two criminal-history points should be added "if the defendant committed the instant offense while under any criminal justice sentence, including probation." U.S.S.G. § 4A1.1(d). The Commentary to this provision explains that it applies when the defendant commits "any part of the instant offense (*i.e.* any relevant conduct) while under any criminal justice sentence." Relevant conduct includes all acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction."

12

U.S.S.G. § 1B1.3(a)(2).

The government correctly asserts that the two-point criminal justice sentence enhancement did not change Jackson's criminal history category. See Government Brief at 14-15. The enhancement moved Jackson's total criminal-history points from seven to nine; in either case, his criminal history category is IV. See U.S.S.G. Ch.5, Pt. A (table). In sentencing Jackson, the district court did not indicate that it considered the fact that he committed the offense conduct while under a criminal justice sentence. Therefore, even if the two points were added in error, such error would be harmless. See Fed. R. Crim. P. 52 ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.")

The district court did not clearly err in finding that conduct relevant to the offense took place while Jackson was under a sentence of probation for forgery. The government established this fact by preponderance of the evidence. In the plea agreement, the parties stipulated that Capital City Bank accounts under the names "Derek B. Jackson," "Michael Terrell Jackson," and "Monique Danielle Dennis" were used to further a conspiracy to defraud the government. See R1-150 at 5. The government presented testimony showing that, in 2008, "Derrick Jackson," "Michael Terrell Jackson," and "Monique Dennis," opened accounts with Capital

13

City Bank and that refund anticipation loans were deposited into those accounts. R5 at 54. It was established and not disputed that Jackson operated his tax scheme by directing people to open bank accounts to which he would send fraudulently obtained refunds. See R1-150 at 5, 7. Because the conduct took place in 2008, during Jackson's probation, and was part of the same course of conduct or common scheme as the offense of conviction, it amounted to relevant conduct under the Guidelines. Accordingly, the court's addition of two criminal history points was appropriate.

## B.    Reasonableness

We review the final sentence imposed by a district court for reasonableness. Booker, 543 U.S. 220 at 264, 125 S. Ct. at 767. We must ensure that the district court committed no significant procedural error, such as "failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chosen sentence." Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). After we determine that the district court's sentencing decision is procedurally sound, we review the substantive reasonableness of the sentence for abuse of discretion, taking into account the totality of the circumstances, including the extent of any variance from the guideline range. Id.

14

This reasonableness review is "deferential," requiring us to determine "whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam). There is a "range of reasonable sentences from which the district court may choose," and the burden is on the defendant to show that the sentence was unreasonable in light of the record and the § 3553(a) factors. Id. While we ordinarily expect a sentence within the guideline range to be reasonable, we may not presume that a sentence outside the guideline range is unreasonable. Id. at 788; Gall, 552 U.S. at 51, 128 S. Ct. at 597.

> [An appellate court] may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

Gall, 552 U.S. at 51, 128 S. Ct. at 597.

The § 3553(a) factors that the court must consider are: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for adequate deterrence to criminal conduct; (5) protection of the public from further crimes of the defendant; (6) the kinds of sentences available; (7) the

15

applicable guideline range and any pertinent policy statement issued by the Sentencing Commission; (8) the need to avoid unwarranted sentencing disparities; and (9) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)-(7).

"The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007) (quotations and alterations omitted). We will remand for resentencing only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (citation and quotation omitted).

Jackson contends that the district court abused its discretion in departing from the sentencing guidelines because the factors on which the court relied did not warrant an upward variance. He argues that the court's declining to impose the four-level increase for organizing or leading a criminal activity with five or more participants contradicts its later finding that his scheme "engaged a number of people." R5 at 60. He asserts that the Guidelines already contemplate some of the

16

factors considered by the court in its upward variance inquiry, including the amount in losses caused by his fraud. He argues that his criminal history does not merit an upward variance.

The argument that the court should not have considered factors already taken into account by the Guidelines is without merit. The Guidelines are not the only factor a court should consider in fashioning a reasonable sentence. See Gall, 552, US at 49, 128 S. Ct. at 596. Section 3553(a) requires that a court take into account the nature and circumstances of the offense and the history and characteristics of the defendant, regardless of the fact that the Guidelines necessarily, to some extent, take those factors into account.

The fact that the court declined to apply the four-level enhancement for being an organizer or leader of a criminal activity that involved five or more participants has no bearing on the court's finding that Jackson's scheme engaged a number of people. See Jackson's Brief at 17-19. The court declined to apply the four-level enhancement only because it was unsure whether some of the people involved in Jackson's scheme qualified as "participants," as that term is defined in the Guidelines. See R5 at 49. The evidence established, however, that there were a number of people involved, regardless of whether they were criminally responsible for the offense. See id. at 11-38.

The court was entitled to find that $106,165, the amount to which the parties stipulated, was a substantial amount of money, and it did not err by taking this amount into account when considering the § 3553(a) factors. See Gall, 552 U.S. at 49, 128 S. Ct. at 596.

Jackson's assertion that the court should not have considered the factors of blackmail, duress, and coercion because it declined to impose an enhancement under § 2B1.1 is without merit because § 2B1.1 does not provide an enhancement for those offense characteristics. See Jackson's Brief at 21; U.S.S.G. § 2B1.1. Finally, Jackson's argument that his criminal history did not warrant an upward variance is without merit; the district court only considered Jackson's criminal history as one factor among many in assessing what sort of sentence would be appropriate.

The record indicates that Jackson's above-range sentence of 42 months' imprisonment is procedurally and substantively reasonable. The court properly considered the § 3553(a) factors, made an individualized assessment based on the facts presented, and articulated specific, thought-out reasons for imposing a 12-month upward variance based on Jackson's history and characteristics, the nature and circumstances of the offense, the need to provide adequate deterrence, and the need for the sentence to reflect the seriousness of the offense.

## III.  CONCLUSION

Jackson appeals the district court's sentence, challenging the application of a criminal justice sentence enhancement and the reasonableness of the sentence.  We hold that the district court did not plainly err in finding relevant conduct that supported the imposition of the enhancement and that the sentence was reasonable both in procedure and substance.  Based on review of the record and the parties' briefs, we affirm Jackson's sentence.

**AFFIRMED.**